UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

KATHLEEN GRACE DELIA,

                    Petitioner,

        v.

ANDREW SAUL,
Commissioner of Social Security
Administration,

                    Respondent.

Case No. 1:18-CV-00314-CWD

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Pending before the Court is Kathleen Grace Delia's Petition for Review of the

Respondent's denial of social security benefits, filed July 16, 2018. (Dkt. 1.) The Court

has reviewed the Petition, Answer, the parties' memoranda, and the administrative record

(AR). For the reasons that follow, the decision of the Commissioner[1] will be affirmed.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental

Security Income on November 5, 2014, claiming disability beginning July 15, 2014. This

application was denied initially and on reconsideration, and a hearing was held on

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for
Acting Commissioner Nancy A. Berryhill as the Respondent in this suit. No further action needs
to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social
Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

January 13, 2017, before Administrative Law Judge (ALJ) Lloyd E. Hartford. After hearing testimony from Petitioner; a medical expert, Colette Valette, Ph.D.; and a vocational expert, Jerry Gravatt, the ALJ issued a decision finding Petitioner not disabled on June 7, 2017. Petitioner timely requested review by the Appeals Council, which denied her request for review on May 11, 2018.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 54 years of age. Petitioner has a high school education and attended special education classes. Petitioner's prior work experience includes work as a retail specialist, auto-parts deliverer, retail laborer, retail sales, and auto shop secretary.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of July 15, 2014.

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's obesity, autoimmune hepatitis, non-alcoholic steatohepatitis (NASH), and undifferentiated connective tissue disease were severe impairments within the meaning of the Regulations. However, the ALJ found Petitioner's

fibromyalgia, depression, anxiety disorder, panic disorder, and borderline personality disorder were nonsevere impairments. In so finding, the ALJ discussed the medical evidence in the record. The ALJ assigned limited weight to the opinion of Petitioner's treating therapist, Chester Mardis, Licensed Clinical Professional Counselor (LCPC), and the state agency reviewing physicians. The ALJ gave significant weight to the opinion of the medical expert who testified at the hearing, Colette Valette, Ph.D., clinical psychologist.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically listing 5.05 (Chronic Liver Disease) and listing 14.06 (Undifferentiated and Mixed Connective Tissue Disease).

If the claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant demonstrated an inability to perform past relevant work. The ALJ determined Petitioner retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with some physical limitations on her ability to lift, carry, push, or pull certain weights; stand, walk, and/or sit; climb ramps, stairs, ladders, ropes, or scaffolds; perform fine hand manipulations; and that Petitioner should avoid concentrated exposure to extreme cold and heat, odors, dust, gases, and fumes; avoid working near hazards such as heights and around machinery; but that Petitioner had no visual or communicative limitations. (AR 23.)

**MEMORANDUM DECISION AND ORDER - 3**

In determining the RFC, the ALJ found the Petitioner's impairments could reasonably be expected to cause the alleged symptoms, but that Petitioner's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the evidence in the record. The ALJ reviewed the evidence in the record and discounted the opinion of one of Petitioner's treating physicians, Brad Hyatt, D.O., and also gave limited weight to the state agency reviewing physicians and the lay statements of Petitioner's mother and husband.

The ALJ found Petitioner was able to perform her past relevant work as a stock clerk. Therefore, the ALJ determined Petitioner was not disabled and did not proceed to step five where the burden would have shifted to the Commissioner to demonstrate that the claimant retained the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's RFC, age, education and work experience.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if their physical or mental impairments are of such severity that they not only cannot do their previous work, but are

also unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision was supported by substantial evidence and was not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its]

judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

On review, Petitioner argues the RFC determination was not supported by substantial evidence, because (1) the ALJ did not properly weigh the opinion evidence and (2) the ALJ failed to incorporate Petitioner's mental limitations in the RFC.

**1.     The ALJ Properly Considered the Opinion Evidence**

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'"

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. §

404.1527(c)(2)); *see also* SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996)

(stating that a well-supported opinion by a treating source which is not inconsistent with

other substantial evidence in the case record "must be given controlling weight; i.e. it

must be adopted.").

ALJs generally give more weight to medical opinions from treating physicians,

"since these sources are likely to be the medical professionals most able to provide a

detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a

unique perspective to the medical evidence that cannot be obtained from the objective

medical findings alone or from reports of individual examinations...." 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given

more weight than the opinion of a doctor who does not treat the claimant. *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Should the ALJ decide not to give a treating

physician's medical opinion controlling weight, the ALJ must weigh it according to

factors such as the nature, extent, and length of the physician-patient relationship, the

frequency of evaluations, whether the physician's opinion is supported by and consistent

with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20

C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[2]

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray*

---

[2] The Social Security Administration recently revised its criteria for evaluating medical opinion
evidence. For claims filed after March 27, 2017, the rules in § 404.1520c apply. However, for
claims filed before March 27, 2017, such as in this case, the rules in 20 C.F.R. § 404.1527 apply.

**MEMORANDUM DECISION AND ORDER - 7**

*v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (citation omitted); *see also* SSR 96-2P, 1996 WL 374188 at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Likewise, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

 Nonmedical or other source opinions are not entitled to the same deference as

acceptable medical source opinions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing 20 C.F.R. § 404.1527; SSR 06-03p). Acceptable medical sources include licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. § 416.913(a). Medical sources not listed as an acceptable medical source are considered "other sources." 20 C.F.R. § 414.913(d); SSR 06-03p. "Other sources" include: licensed clinical social workers, therapists, public and private social welfare agency personnel, and rehabilitation counselors. SSR 06–03p; *see also* 20 C.F.R. §§ 416.913(a), (d). The ALJ may discount testimony from "other sources" only if the ALJ "gives reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).

In this case, Petitioner argues the ALJ erred by rejecting the opinion of her treating physician, Dr. Hyatt, and by failing to explain the weight given to the mental health opinions in the record. Respondent maintains the ALJ properly rejected Dr. Hyatt's opinion because it was based largely on Petitioner's unreliable subjective complaints and was inconsistent with the medical evidence in the record, and the ALJ properly weighed the mental health opinion evidence. (Dkt. 15.)

## A. Dr. Hyatt's Opinion

Dr. Hyatt treated Petitioner from April 5, 2015, to November 14, 2016, for headaches, insulin resistance syndrome, pain in multiple joint sites, hypothyroidism, and body aches. On January 26, 2017, Dr. Hyatt completed a Manipulative Limitations Medical Source Statement (MSS) reporting that Petitioner had tenderness, pain, redness,

paresthesia, soft tissue swelling, muscle weakness, limited motion, joint warmth, reduced

grip strength, and muscle atrophy. (AR 890.) Dr. Hyatt characterized the nature of

Petitioner's pain as autoimmune connective tissue disorder that caused chronic

sharp/stabbing pain in Petitioner's wrists, lasting for hours. Dr. Hyatt opined that

Petitioner was limited to lifting 10 pounds in both arms; could use her hands and fingers

10% of the time during an 8-hour work day; could reach her arms in front of her body

10% of the time in an 8-hour work day; and could reach her arms overhead 5% of the

time in an 8-hour work day. (AR 891.) Dr. Hyatt further opined Petitioner could use her

hands and fingers continuously for 10 minutes before needing a rest break of 180 minutes

before resuming another period of continuous use.

The ALJ gave limited weight to Dr. Hyatt's opinion, stating it appeared to be

"based on the [Petitioner]'s subjective report of her limitations, as there is nothing in his

or Dr. Reddy's records to show such a significant limitation of function." (AR 25.)[3]

Having concluded Dr. Hyatt's opinion was contradicted by other evidence in the record,

the ALJ was required to provide specific and legitimate reasons supported by substantial

evidence in the record for discrediting Dr. Hyatt's opinion. *Ryan*, 528 F.3d at 1198;

*Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).[4] The ALJ did so here.

---

[3] Respondent's brief also points to the opinions of two DDS reviewing medical consultants to
show Dr. Hyatt's opinion is contradicted by other opinions in the record. (Dkt. 15 at 8.) The
Court has not considered this argument, because the ALJ did not rely on those DDS opinions as a
basis for rejecting Dr. Hyatt's opinion in the decision. *See Brown-Hunter v. Colvin*, 806 F.3d
487, 494 (9th Cir. 20151); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[4] Even if Dr. Hyatt's opinion was uncontradicted, the Court still finds, for the reasons stated

"An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. Here, the ALJ found Petitioner's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the evidence in the record. (AR 23.) Petitioner has not contested that finding. Instead, Petitioner argues Dr. Hyatt's opinion was supported by the record and not based merely on subjective reports. (Dkt. 16 at 2.) The Court disagrees.

The ALJ reviewed Dr. Hyatt's records from 2016, which contradicted the findings in his 2017 MSS opinion. In the 2016 records, Dr. Hyatt reported Petitioner was "doing well" after her bariatric surgery, "was back to regular activity," and "had more energy." (AR 24, 763-777.) Given the limited content of the 2017 MSS and the contradictory findings in Dr. Hyatt's 2016 records, there was a reasonable basis in the record for the ALJ to conclude that Dr. Hyatt's 2017 MSS opinion was based on Petitioner's subjective reports. While the Petitioner may disagree with the ALJ's review of the record, the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence. *Tommasetti*, 533 F.3d at 1041-42 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citing *Magallanes*, 881 F.2d at 750). Here, the ALJ discounted the Petitioner's self-reports and reasonably concluded Dr.

herein, that the ALJ stated clear and convincing reasons supported by substantial evidence for rejecting Dr. Hyatt's opinion. *See Ryan*, 528 F.3d at 1198.

Hyatt's MSS opinion was based on those self-reports.

Further, the ALJ's finding that Dr. Hyatt's 2016 medical records did not support the limitations set out in the MSS provides an additional specific and legitimate reason for rejecting Dr. Hyatt's opinion of Petitioner's limitations. *Tommasetti*, 53 F.3d at 1041 (An "incongruity" between a doctor's opinion and the medical records provides an additional specific and legitimate reason for rejecting the doctor's opinion of a claimant's limitations.).

The ALJ also discussed other evidence in the record that contradicted Dr. Hyatt's opinion as well as Petitioner's subjective reports. (AR 23-25.) Specifically, the ALJ pointed to the records of Akavaram N. Reddy, M.D., who treated Petitioner from October 14, 2015, to December 21, 2016, for undifferentiated connective tissue disease, autoimmune thyroiditis, myofascial pain syndrome, joint pain, antinuclear antibodies, and autoimmune hepatitis. Dr. Reddy's records also contradicted Dr. Hyatt's MSS opinion. In 2016, Dr. Reddy reported Petitioner's symptoms were mild, she had normal muscle strength in both her upper and lower extremities, and he recommended that Petitioner remain active and do yoga, water exercise, tai chi, and low impact activity. (AR 24, 845.)

The ALJ also considered statements from Petitioner's mother and husband, which both indicated Petitioner was able to perform a wide variety of daily activities including personal care, care for pets, fix simple meals, do laundry and other household chores, drive a car, shop, and visit with family members and a counselor. (AR 24.) These statements were likewise inconsistent with Petitioner's subjective reports of her

limitations and with Dr. Hyatt's opinion in the MSS. *See Rollins*, 261 F.3d at 856 (affirming the ALJ's rejection of a treating physician's opinion where the physician imposed restrictions on the claimant that appeared inconsistent with the claimant's daily activities).

Based on this record, the Court finds the AJL provided specific and legitimate reasons, supported by substantial evidence, for giving limited weight to Dr. Hyatt's opinion. Namely, Dr. Hyatt's reliance on Petitioner's subjective reports whose credibility the ALJ discounted, *see Tommasetti*, 533 F.3d at 1041, and the contradictory evidence in Dr. Hyatt's own treatment records, Dr. Reddy's records, and reports of Petitioner's daily activities by her mother and husband. *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Lester*, 81 F.3d at 830–31.

## B.   Mental Opinion Evidence

Petitioner asserts the ALJ failed to properly evaluate her mental impairments at step 2 by improperly dismissing LCPC Mardis' opinion which, Petitioner argues, supported finding her mental impairments were severe and, therefore, should have been considered in the RFC. (Dkt. 14, 16.)

On April 6, 2017, LCPC Mardis completed a Mental Impairment Questionnaire (MIQ) concluding, as to the paragraph B criteria in particular, that Petitioner had no limitations in understanding, remembering or applying information; had extreme limitations in interacting with others; and had moderate limitations in concentrating,

persisting, or maintaining pace and in adapting or managing oneself. (AR 883.) LCPC Mardis also noted that Petitioner becomes anxious and has panic attacks which negatively impact her functional ability to interact with others, and opined that Petitioner would be absent from work about three days per month.

Licensed clinical counselors, such as Mardis, are not "acceptable medical sources" under the regulations, but are instead considered "other sources." *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); SSR 06-03p. The ALJ may discount testimony from "other sources" only if the ALJ "gives reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010). Non-acceptable medical sources should be evaluated under the same factors as other medical opinions as set forth in 20 C.F.R. § 404.1527(d).

Here, the ALJ gave limited weight to LCPC Mardis' opinion, noting there were no treatment records supporting the opinion, the opinion overstated Petitioner's limitations, and the opinion was inconsistent with the other evidence in the records, primarily Dr. Ronald Cantone's 2016 psychiatric assessment. (AR 20.) Petitioner asserts the ALJ improperly rejected LCPC Mardis' opinion and challenges the ALJ's reliance on Dr. Cantone's opinion as a basis to discredit LCPC Mardis' opinion. Petitioner argues Dr. Cantone's evaluation did not assess Petitioner's functional abilities, but was instead an assessment of Petitioner's ability to undergo bariatric surgery. The Court disagrees.

The ALJ pointed to germane reasons supported by substantial evidence in the record for discrediting LCPC Mardis' opinion and properly considered and explained the

mental opinion evidence. *Turner*, 613 F.3d at 1223-24; 20 C.F.R. § 404.1527(d). In his

consideration of LCPC Mardis' opinion, the ALJ noted Mardis indicated he had

examined the claimant on two occasions, once in 2016 and once in 2017, but that there

were no treatment notes from LCPC Mardis in the record. The ALJ also reviewed the

functional limitations identified in Mardis' opinion but concluded those findings were

overstated and inconsistent with the other evidence in the record, namely Dr. Cantone's

most recent examination.

Dr. Cantone, Psy.D, was Petitioner's treating psychologist beginning in 2014. On

March 31, 2016, Dr. Cantone completed a comprehensive diagnostic assessment of

Petitioner prior to her undergoing bariatric surgery. (AR 885-889.) The findings in Dr.

Cantone's 2016 assessment were contradictory to LCPC Mardis' opinion. In that

assessment, Dr. Cantone recognized that Petitioner experienced anxiety but that her

depression was "well-controlled by her medication," she was "friendly and cooperative,"

and her mental health issues would not interfere with her ability to undergo bariatric

surgery. While Dr. Cantone's 2016 assessment was completed in connection with

Petitioner's bariatric surgery, it was, nonetheless, an assessment of Petitioner's functional

mental limitations by her treating doctor of psychology.[5] The ALJ properly relied upon

Dr. Cantone's assessment and articulated germane reasons for discrediting LCPC Mardis'

opinion.

---

[5] The Court notes the ALJ incorrectly identified Dr. Cantone as an "M.D." instead of a "Psy.D.,"
doctor of psychology. (AR 18.) That inaccuracy does not change the analysis or outcome in this
matter.

The Court finds the ALJ's conclusions and explanations of the mental health opinion evidence were reasonable and supported by substantial evidence in the record. Petitioner's disagreement with the ALJ's findings and conclusions does not warrant remand. *Molina*, 674 F.3d at 1111 (If "the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the [Commissioner's] findings if they are supported by inferences reasonably drawn from the record."); *Tommasetti*, 533 F.3d at 1038 ("The ALJ's findings will be upheld 'if supported by inferences reasonably drawn from the record'") (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)); *Burch*, 400 F.3d at 679 (The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.).

**2.      The ALJ's RFC Determination**

Petitioner claims the ALJ erred by failing to consider her mental impairments in the RFC determination. (Dkt. 14, 16.) The Court agrees but finds that error was harmless.

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). The RFC determination is "a more detailed assessment" than the analysis of the paragraph B criteria. SSR 96-8p. In making the RFC determination, the ALJ must consider all relevant evidence in the record and assess all of Petitioner's impairments, including those that are not severe. *See* 20 C.F.R. §§ 404.1545, 416.923(c), 416.945(a) (2018); SSR 96-8p.

Here, the ALJ concluded at step 2 that Petitioner's depression, anxiety disorder, panic disorder, and borderline personality disorder were medically determinable mental

impairments, but that those impairments were nonsevere because they caused no limitation as to the first three mental functional areas and only mild limitations as to the fourth functional area. 20 C.F.R. §§ 404.1520a(c)(3), (d)(1). Regardless of their severity, the ALJ was required to consider all of Petitioner's medically determinable impairments in making the RFC finding. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]'"). The ALJ failed to do so here. *See Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012); *Carlson v. Berryhill*, Case No. 18-cv-03107-LB, 2019 WL 1116241, at *17 (N.D. Cal. Mar. 10, 2019).

The ALJ's discussion of the RFC contains no mention of any of Petitioner's medically determinable mental impairments found at step 2. In particular, the RFC determination does not address the ALJ's finding that Petitioner's mental impairments caused mild limitations in the area of adapting or managing oneself. Nor does the ALJ's RFC assessment say anything about whether Petitioner's mental impairments limit her ability to work. The RFC discussion addresses only Petitioner's physical limitations. (AR 23-25.) The ALJ, therefore, erred by failing to discuss Petitioner's mental impairments in the RFC analysis.

The boilerplate language at the conclusion of the ALJ's paragraph B discussion stating the RFC assessment "reflects the degree of limitation the [AJL] has found in the 'paragraph B' mental function analysis," does not satisfy the regulatory requirements. *See Carlson v. Berryhill*, Case No. 18-cv-03107-LB, 2019 WL 1116241, at *17 (N.D. Cal.

Mar. 10, 2019) (citing *Hutton v. Astrue*, 491 Fed. Appx. 850 (9th Cir. 2012)); *Loader v. Berryhill*, 722 Fed. Appx. 653 (9th Cir. 2018).[6]

The RFC analysis is a "more detailed assessment" of the mental impairments than was done in the paragraph B analysis. SSR 96-8p. When making the RFC determination, the ALJ is required to "consider all limitations and restrictions imposed by all of an individual's impairments, even those that are not severe" and all of the relevant evidence. SSR 96-8p; 20 C.F.R. § 404.1545; *see also Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.") (quoting Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p) (internal quotations omitted); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (SSRs "do not carry the force of law, but they are binding on ALJs nonetheless," and "[t]hey reflect the official interpretation of the SSA and are entitled to some deference as long as they are consistent with the Social Security Act and regulations") (citations and quotations omitted). The boilerplate language used in the ALJ's decision, without any discussion of Petitioner's mental impairments in the RFC determination, does not satisfy

---

[6] The Court recognizes that some district courts in the Ninth Circuit have found an ALJ's use of such boilerplate language meets the regulation's requirements. *See e.g. JW U.C. v. Comm'r of Soc. Sec.*, Case No. 2:19-cv-90-DWC, 2019 WL 3451515, at *2 (W.D. Wash. July 31, 2019) (finding an ALJ's statement incorporating the paragraph B mental functional analysis into the RFC is sufficient); *Van Houten v. Berryhill*, Case No. 1:17-cv-01238-JLT, 2019 WL 691200, at * 14 (E.D. Cal. Feb. 19, 2019). Those cases, however, are non-binding here. The Court finds the cases cited above more correctly apply the regulatory requirements.

the regulation's requirements.

The ALJ, therefore, erred by not addressing Petitioner's mental impairments in the decision's discussion of the RFC. That error, however, was harmless.

"[W]hen the ALJ commits legal error, we uphold the decision where that error is harmless." *Treichler*, 775 F.3d at 1099; *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have long recognized that harmless error principles apply in the Social Security Act context."). An error is harmless if it is "inconsequential to the ultimate nondisability determination" or "if the agency's path may reasonably be discerned," even if the agency "explains its decision with less than ideal clarity," *Treichler*, 775 F.3d at 1099 (citations omitted).

The record in this case demonstrates the ALJ properly considered Petitioner's mental impairments in his findings regarding Petitioner's functional mental limitations and in making the RFC determination. As discussed above, the ALJ properly considered the opinion evidence. The ALJ's decision that Petitioner's mental impairments were nonsevere was supported by substantial evidence in the record. The ALJ need not include limitations in the RFC that do not cause more than a minimal limitation on a claimant's ability to work. *See e.g., Morris v. Saul*, Case No. 1:18-cv-0262-BAM, 2019 WL 4052216, at *5 (E.D. Cal. Aug. 28, 2019); *Van Houten v. Berrihill*, Case No. 1:17-cv-01238-JLT, 2019 WL 691200, at * 14 (E.D. Cal. Feb. 19, 2019).

Further, a review of the entire record shows the ALJ considered Petitioner's mental functional limitations in making the RFC assessment. At the hearing, the ALJ

inquired of both the medical expert and the vocational expert regarding Petitioner's mental RFC. (AR 38-123.) The ALJ questioned the medical expert extensively about Petitioner's mental impairments and, specifically, about the severity and functional limitations of those mental impairments. (AR 59-99.) The ALJ next asked the vocational expert to opine as to whether or not, "from a mental perspective," the Petitioner was precluded from performing any of her past prior relevant work when considering the testimony of the medical expert and the "mental [RFC]." (AR 74-80, 89-90, 115-117.) The ALJ's hypothetical question posed to the vocational expert included all of the limitations the AJL determined had been reasonably established in the record and were included in the RFC stated in the ALJ's decision. (AR 23, 116-117.) The vocational expert testified that, based on those limitations found by the ALJ, the Petitioner would not be precluded from her past relevant work. (AR 115-117.) The ALJ did not err by not including the limitations found by LCPC Mardis when the ALJ questioned the vocational expert because, as stated above, the ALJ appropriately discounted LCPC Mardis' opinion. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (An ALJ need not incorporate into a vocational hypothetical discounted opinion evidence.).

On this record, the Court finds the ALJ properly considered Petitioner's mental impairments in making the RFC determination and the ultimate disability determination. The Petitioner has not pointed to any evidence the ALJ failed to properly consider or any evidence that would have altered the ALJ's decision. The ALJ's error in not discussing Petitioner's mental impairments in the decision's RFC discussion, therefore, was

harmless, because it was inconsequential to the ultimate nondisability determination. *See Batson*, 359 F.3d at 1197; *Carmickle*, 533 F.3d at 1162 (an ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination."); *Tommasetti*, 533 F.3d at 1038; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

For these reasons, the Court finds the ALJ's error was harmless and the Petition is dismissed. *Robbins*, 466 F.3d at 885.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

DATED: September 23, 2019

Honorable Candy W. Dale
United States Magistrate Judge